Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard, First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE MCGOWAN, <br><br> Plaintiff, <br><br> v. <br><br> U.S. WELL SERVICES, INC., JOEL BROUSSARD, DAVID L. TREADWELL, RICHARD BURNETT, RYAN CARROLL, STEVE S. HABACHY, ADAM KLEIN, DAVID J. MATLIN, and EDDIE WATSON, <br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR: <br><br> (1) Violation of § 14(a) of the Securities Exchange Act of 1934 <br> (2) Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br><br> DEMAND FOR JURY TRIAL |

Plaintiff, Stephanie McGowan, by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against U.S. Well Services, Inc. ("USWS" or the "Company"), USWS's Board of Directors (the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange

Act") as a result of efforts to sell the Company to ProFrac Holding Corp. ("Parent") via merger subsidiary Thunderclap Merger Sub I ("Merger Sub" collectively with Parent, "ProFrac"), and to enjoin an upcoming stockholder vote on an all stock transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a June 21, 2022 filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, USWS shareholders will receive a 0.0561 share of ProFrac common stock for each share of USWS common stock owned. As a result, USWS will become an indirect wholly-owned subsidiary of ProFrac.

3.      Thereafter, on August 30, 2022, ProFrac filed a Registration Statement on Form S4 attaching the proxy statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction.   The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in

favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for USWS, provided by USWS management to the Board and the Board's financial advisor Piper Sandler & Co. ("Piper Sandler") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Piper Sandler, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

7.      Plaintiff is a citizen of California and, at all times relevant hereto, has been a USWS shareholder.

7.      Defendant USWS is a Delaware corporation whose principal executive office is located at 1360 Post Oak Boulevard, Suite 1800, Houston, Texas. USWS's common stock is publicly traded on Nasdaq under the symbol "USWS."

8.      Defendant Joel Broussard ("Broussard") has served as director of Company at all relevant times. In addition, Broussard also serves as the Chairman of the Board.

9.      Defendant David L. Treadwell ("Treadwell") has served as director of Company at all relevant times.

10.     Defendant Richard Burnett ("Burnett") has served as director of Company at all relevant times.

11.     Defendant Ryan Carroll ("Carroll") has served as director of Company at all relevant times.

12.     Defendant Steve S. Habachy ("Habachy") has served as director of Company at all relevant times.

13.     Defendant Adam Klein ("Klein") has served as director of Company at all relevant times.

14.     Defendant David J. Matlin ("Matlin") has served as director of Company at all relevant times.

15.     The Defendants named in paragraphs 8-14 are referred to herein as "Individual Defendants" or "Director Defendants."

16.     Non-Party Parent provides hydraulic fracturing, completion, and other complementary products and services to upstream oil and gas companies engaged in the exploration and production in North America. Parent's common stock is publicly traded on NasdaqGS under the symbol "PFHC."

17.     Non-party merger sub is a wholly owned subsidiary of parent created to complete the Proposed Transaction.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19.     Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District, or is an individual who is either present

in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NasdaqGS Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Background of USWS*

21.     U.S. Well Services, Inc. operates as an oilfield service company in the United States. It provides pressure pumping services; and hydraulic fracturing services to the oil and natural gas exploration, and production companies. The company was founded in 2012 and is headquartered in Houston, Texas.

22.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a May 16, 2022 press release announcing its 2022 First Quarter Financial Results, the Company highlighted such milestones as total revenue of $41.2 million compared to $38.9 million in the fourth quarter of 2021.

23.     Speaking on the positive results, CEO Kyle O'Neill commented in the Press Release, "Despite the challenges we continued to face throughout much of the first quarter of 2022, I am proud of what our team accomplished."

24.     The financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by USWS. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

25.     Nevertheless, the Individual Defendants have caused USWS to enter into the Proposed Transaction.

***The Flawed Sales Process***

26.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

27.     Further, despite negotiating a stock for stock transaction, the Board failed to ensure a collar mechanism was included in the merger agreement to prevent a precipitous fall in the stock price.

28.     Additionally, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

29.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

30.     On June 21, 2022, USWS and ProFrac issued a joint press release announcing the

Proposed Transaction.  The press release stated, in relevant part:

> **WILLOW PARK, Texas and HOUSTON, June 21, 2022 /PRNewswire/ --**
> ProFrac Holding Corp. (NASDAQ: PFHC) ("ProFrac" or the "Company")
> announced today that it has reached an agreement to acquire U.S. Well Services,
> Inc. (NASDAQ: USWS) ("USWS") in a stock-for-stock transaction with an
> exchange ratio of 0.0561 shares of ProFrac Class A common stock for each share
> of USWS Class A common stock.  The acquisition is expected to be completed in
> the fourth quarter of 2022, subject to the satisfaction of customary closing
> conditions, including the approval of USWS stockholders.

> The combination creates a market leader in NextGen frac solutions and a combined
> company with an expected 44 active fleets by the end of 2022:

> - Transaction expected to expand ProFrac's fleet to 44 active fleets by year
>   end, including 12 electric fleets, 13 Tier IV dual fuel fleets, and 3 Tier IV
>   diesel fleets
> - Combined company expected to be the largest provider of electric frac
>   services with 12 electric fleets
> - Accelerates ProFrac's ESG strategy of reducing fuel costs and minimizing
>   its emissions footprint
> - Marries leading edge efficiency and cost structure from ProFrac with the
>   largest electric fleet platform in the industry to deliver exceptional value for
>   the combined company and substantial cost savings to customers
> - ProFrac would acquire USWS' industry leading intellectual property
>   portfolio that gave rise to electric frac technology with the market's first e-
>   fleet deployment in 2014, which includes over 110 patents
> - USWS Convertible Senior Notes and Series A Redeemable Preferred
>   Shares to be converted into shares of ProFrac Class A common stock at
>   closing
> - Combined company expected to maintain a conservative balance sheet;
>   ProFrac expects to separately finance remaining USWS debt at closing
> - Expected to result in approximately $35 million of annual cost synergies
>   and eliminate ProFrac's expected license fees to USWS of approximately
>   $22.5 million per year over the next four years
> - Expected to be accretive to 2023 Adjusted EBITDA

> Matt Wilks, ProFrac's Executive Chairman, commented, "The acquisition of U.S.
> Well Services solidifies ProFrac's position as an industry leader in electric
> hydraulic fracturing, which we believe represents the future of the industry.  In
> today's environment, we believe electric frac fleets provide improved efficiency,
> lower R&M costs, greater value, and a lower overall cost of completion to our

customer.  It is a true win-win scenario for us, our customers, the environment and the communities in which we operate."

Ladd Wilks, ProFrac's Chief Executive Officer, said, "We are excited to welcome the U.S. Well Services team to the ProFrac family.  We recognize the hard work of everyone to get to this point and I am excited to join forces and build upon the foundation this team has established.  By leveraging our scale and capabilities along with U.S. Well Services' Clean Fleet® technology, we intend to make ProFrac THE electric fleet provider in the U.S."

Kyle O'Neill, U.S. Well Services' President and CEO, added, "We are thrilled to join forces with ProFrac. ProFrac is a best-in-class operator, and we believe the combined company will be well positioned to capitalize on the growing opportunity for electric fracturing services.  This combination provides value for U.S. Well Services shareholders, employees and customers, and we look forward to working with the ProFrac team to realize our shared vision for the business."

*Potential Conflicts of Interest*

31.     The breakdown of the benefits of the deal indicate that USWS insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of USWS.

32.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Registration Statement provides the following information, it fails to account for the consideration which such shares will be exchanged for.

33.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff

and other public stockholders of the Company.  The Registration Statement accounts for these awards as follows:

| Name | Title | Cash Payments | Stock Awards | Performance Awards | Term C Lender Warrants | Total ($) |
|---|---|---|---|---|---|---|
| Joel Broussard | Chairman of the Board | $  633,340 | $  2,762,474 | $3,131,254 | $  — | $  6,527,068 |
| Richard Burnett | Director | $  — | $  — | $  — | $  — | $  — |
| Ryan Carroll | Director | $  — | $  — | $  — | $  — | $  — |
| Steve Habachy | Director | $  — | $  — | $  — | $  — | $  — |
| Adam Klein | Director | $  — | $  — | $  — | $  1,227,907 | $  1,227,907 |
| David Matlin | Director | $  — | $  — | $  — | $  122,791 | $  122,791 |
| Kyle O'Neill | Director, President and Chief Executive Officer | $  2,104,274 | $  1,277,570 | $2,351,572 | $  — | $  5,733,417 |
| David Treadwell | Director | $  — | $  — | $  — | $  — | $  — |
| Eddie Watson | Director | $  — | $  — | $  — | $  — | $  — |
| Josh Shapiro | Chief Financial Officer | $  1,381,644 | $  753,322 | $1,274,002 | $  — | $  3,408,96 |

34.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

35.     Thus, while the Proposed Transaction is not in the best interests of USWS, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

36.     On August 30, 2022, the USWS Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

37.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a. Adequate disclosure as to why no collar mechanism was included in the merger agreement;

b. Whether the confidentiality agreements entered into by the Company with ProFrac differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including ProFrac, would fall away; and

d. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning USWS's and ProFrac's Financial Projections*

38.     The Registration Statement fails to provide material information concerning financial projections for USWS provided by USWS management to the Board and Piper Sandler and relied upon by Piper Sandler in its analyses.   The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

39.     Notably the Registration Statement reveals that as part of its analyses, Piper Sandler reviewed internal information regarding the operations and financial prospects of USWS.

40.     Therefore, the Registration Statement should have, but fails to provide, certain information in the projections that USWS management provided to the Board, Piper Sandler, and Piper Sandler.   Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.   Investors can come up with their own estimates of discount rates or [] market multiples.   What they cannot hope to do is replicate management's inside view of the company's prospects."   *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

41.     With regard to the *USWS Prospective Financial Information* prepared by USWS, the Registration Statement fails to disclose material line items for the following:

     a.   With Regard to the *Base Case* Scenario, the Registration Statement fails to disclose the following:

          i.   Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: Stock Based Compensation.

     ii.  Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: income, depreciation and amortization, income tax expense, stock-based compensation expense, net interest expense, other non-cash charges, and other management adjustments used to calculate this metric;

     iii.  Total Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: maintenance and growth capital expenditures; and

     iv.  Total Free Cash Flows, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: maintenance and growth capital expenditures.

b.  With Regard to the *Downside Projections* Scenario, the Registration Statement fails to disclose the following:

     i.  Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: Stock Based Compensation.

     ii.  Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: income, depreciation and amortization, income tax expense, stock-based compensation expense, net interest expense, other non-cash charges, and other management adjustments used to calculate this metric;

     iii.  Total Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: maintenance and growth capital expenditures; and

     iv.  Total Free Cash Flows, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: maintenance and growth capital expenditures.

42.    With regard to the *ProFrac Prospective Financial Information* prepared by USWS, the Registration Statement fails to disclose material line items for the following:

    a.  Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: interest expense, income tax provision, depreciation, depletion and amortization, loss on disposal of assets, stock-based compensation, and other non-recurring charges; and

    b.  Operating Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate the metric, including specifically: net income adjusted for non-cash items and changes in working capital.

43.    The Recommendation Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various cases of projections rely.

44.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

45.    This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Piper Sandler' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.   As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Piper Sandler*

47.     In the Registration Statement, Piper Sandler describes its fairness opinion and the various valuation analyses performed to render such opinion.   However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.   Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48.     With respect to the *Select Comparable Company Analyses*, the Registration Statement fails to disclose the following:

     a.   The specific metrics for each company compared;

     b.   The specific consensus analyst estimates consulted as well as the Wall Street research firms who authored them;

     c.   The multiples, inputs, metrics and assumptions used to determine a reference range of 0.0927x to 0.2601x for 2021 EBITDA;

     d.    The EV/2021 EBITDA reference range selected as well as the inputs, metrics, and assumptions used to determine the range;

     e.   The EV/2022P EBITDA reference range selected as well as the inputs, metrics, and assumptions used to determine the range ;

    f.   The EV/2023P EBITDA reference range selected as well as the inputs, metrics, and assumptions used to determine the range; and

    g.   The EV/Total HHP reference range selected as well as the inputs, metrics, and assumptions used to determine the range.

49.    With respect to the *Select Comparable Transaction Analyses*, the Registration Statement fails to disclose the following:

    a.   The specific metrics for each transaction compared;

    b.   The specific date on which each transaction closed;

    c.   The value of each transaction compared;

    d.   The range of Transaction Value Per HHP determined as well as the specific inputs, metrics, and assumptions used to determine the range;

    e.   The range of EV/Last Recorded Historical EBITDA determined as well as the specific inputs, metrics, and assumptions used to determine the range.

    f.   The range of EV/First Full Year Projected EBITDA determined as well as the specific inputs, metrics, and assumptions used to determine the range.

50.    With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

    a.   The inputs, metrics, and assumptions used to determine an EBITDA exit multiple of 4.0x;

    b.   The terminal value for the Company and for ProFrac;

    c.   The specific inputs and assumptions used to determine a discount rate of 22.5% for USWS and 12.5% for ProFrac;

    d.   The weighted average cost of capital for ProFrac;

    e.   The weighted average cost of capital for the Company;

    f.   The specific inputs and assumptions used to determine a range of terminal value multiples for both companies of 3.0x to 5.0x;

    g.   The specific inputs and assumptions used to determine a range of discount rates of 20.0% to 25.0% for USWS; and

    h.   The specific inputs and assumptions used to determine a range of discount rates of 10.0% to 15.0% for ProFrac.

51. With respect to the *Contribution Analysis*, the Registration Statement fails to disclose the following:

    a.   The various contribution percentages and ratios based on the 2021 EBITDA for USWS and ProFrac used in this analysis for both the base case and the downside case; and

    b.   The consensus analyst estimates consulted as well as the Wall Street Research firms who authored them.

52. With respect to the *Other Information (Premiums Paid Analysis)*, the Registration Statement fails to disclose the following:

    a.   The specific transactions compared;

    b.   The value of each transaction compared;

    c.   The date on which each transaction compared closed; and

    d.   The reference range of premiums paid used as well as the inputs, metrics, and assumptions used to determine the range.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Jefferies*

53.     In the Registration Statement, Jefferies describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions

54.     With respect to the *Select Comparable Company Analyses*, the Registration Statement fails to disclose the following:

> a.   The specific metrics for each company compared;
>
> b.   The specific research analyst estimates consulted as well as the Wall Street research firms who authored them;
>
> c.   The inputs, metrics, and assumptions used to determine selected range of enterprise value to estimated 2022 EBITDA multiples of 4.25x to 6.25x;
>
> d.   The inputs, metrics, and assumptions used to determine selected range of enterprise value to estimated 2023 EBITDA multiples of 3.0x to 5.0x;
>
> e.   The inputs, metrics, and assumptions used to determine selected range of enterprise value to estimated 2024 EBITDA multiples of 2.5x to 4.5x;
>
> f.   ProFrac's net debt; and
>
> g.   The number of fully diluted shares of ProFrac common stock.

55.     With respect to the *Discounted Cash Flow Analysis - ProFrac*, the Registration Statement fails to disclose the following:

> a.   The terminal value for ProFrac;

    b.  The inputs, metrics, and assumptions used to determine range of enterprise value to adjusted EBITDA multiples of 4.25x to 6.25x;

    c.  The inputs, metrics, and assumptions used to determine a discount rate range of 14.9% to 16.9%;

    d.  ProFrac's weighted average cost of capital;

    e.  ProFrac's net debt; and

    f.  The number of fully diluted shares of ProFrac common stock.

56.    With respect to the *Selected Public Companies Analysis - USWS*, the Registration Statement fails to disclose the following:

    a.  The specific metrics for each company compared;

    b.  The specific research analyst estimates consulted as well as the Wall Street research firms who authored them;

    c.  The inputs, metrics, and assumptions used to determine selected range of enterprise value to estimated 2022 EBITDA multiples of 4.25x to 6.25x;

    d.  The inputs, metrics, and assumptions used to determine selected range of enterprise value to estimated 2023 EBITDA multiples of 3.0x to 5.0x;

    e.  The inputs, metrics, and assumptions used to determine selected range of enterprise value to estimated 2024 EBITDA multiples of 2.5x to 4.5x;

    f.  The Company's net debt; and

    g.  The number of fully diluted shares of USWS common stock.

57.    With respect to the *Discounted Cash Flow Analysis - USWS*, the Registration Statement fails to disclose the following:

    a.  The terminal value for the Company;

 b. The inputs, metrics, and assumptions used to determine range of enterprise value to adjusted EBITDA multiples of 4.25x to 6.25x;

 c. The inputs, metrics, and assumptions used to determine a discount rate range of 18.3% to 20.3%;

 d. The Company's weighted average cost of capital;

 e. The Company's net debt; and

 f. The number of fully diluted shares of USWS common stock.

58. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

59. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public USWS stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

60. Plaintiff repeats all previous allegations as if set forth in full herein

61. Defendants have disseminated the Information Statement in favor of the Proposed Transaction.

62.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

63.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64.     The Information Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Information Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66.     The Individual Defendants were at least negligent in filing an Information Statement that was materially misleading and/or omitted material facts necessary to make the Information Statement not misleading.

67.     The misrepresentations and omissions in the Information Statement are material to Plaintiff and the Class, and at present fail to provide complete information if such misrepresentations and omissions are not corrected.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against All Defendants)**

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Information Statement was materially misleading to Company stockholders.

70.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual

Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Information Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Information Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Information Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of USWS's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Information Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Information Statement and are therefore responsible and liable for the misrepresentations contained herein.

72.     The Individual Defendants acted as controlling persons of USWS within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause USWS to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled USWS and all of its employees.  As alleged above, USWS is a primary violator of Section 14 of the Exchange Act and SEC Rule Information Statement.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in her favor, and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 2, 2022                **BRODSKY & SMITH**

By: _/s/ Evan J. Smith_____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*